**UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA**
**Orlando Division**

Case No_____

ELIEZER TAVERAS, AND
VALERIA ROSA TAVERAS

     *Plaintiffs*

v.

BANK OF AMERICA, N.A.;
SERVIS ONE, INC., DBA BSI FINANCIAL SERVICES;
CHRISTIANA TRUST, A DIVISION OF WILMINGTON
SAVINGS FUND SOCIETY, FSB, NOT IN ITS
INDIVIDUAL CAPACITY, BUT AS TRUSTEE OF ARLP
TRUST 4;

     *Defendants*

_____/

**VERIFIED COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

     COME NOW, VALERIA ROSA TAVERAS, and ELIEZER TAVERAS, husband and
wife (collectively the "Plaintiffs"), *pro se*, and file suit against Defendants BANK OF AMERICA,
N.A. ("BANA"); SERVIS ONE, INC., DBA BSI FINANCIAL SERVICES ("BSI"); and
CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB,
NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 4 (the "Trust")
and further stay:

## I. PRELIMINARY STATEMENT

1.     The facts giving rise to this action begin on 06/22/2015 and run up to around 04/20/2018.

2.     The Plaintiffs had actual knowledge of the **main facts** around December 03, 2019. The
discovery could not be done before, even with reasonable due diligence.

3.     This lawsuit is been timely filed.

4.  The Defendants created and conducted a continuing pattern and practice of activity through an association-in-fact enterprise, directed toward an economic goal: the acquisition of title to, right, or interest in real property.

5.  This is an action to remedy substantial personal and business injuries suffered by the Plaintiffs as a direct and proximate cause of Defendants' unlawful acts and practices.

6.  A notice of lis pendens, which specifically describes the real property affected by this lawsuit, is been registered contemporaneously with this action in the Public Records of Osceola County, Florida, in accord with Fla. Stat. 48.23, and in compliance with F.S. 817.535(8).

## II. <u>THE PARTIES</u>

### PLAINTIFFS

7.  Plaintiff, Eliezer Taveras, is a natural person, a citizen of the USA, and the State of Florida. He is sui juris.

8.  Plaintiff, Valeria Rosa Taveras a/k/a Valeria Taveras is a natural person, a temporary resident in Madrid, Spain, and a citizen of the United States, and the State of Florida. She is sui juris.

### DEFENDANTS

9.  Defendant, Bank of America, N.A. is a diversified global financial service and a national banking association, a Delaware corporation headquartered in Charlotte, North Carolina.

10. Defendant, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, Not in Its Individual Capacity, But as Trustee of ARLP Trust 4, **is a trust**, which **trustee** is Christiana Trust, A Division of Wilmington Savings Fund Society, FSB (the "Trustee"), a federal savings bank with its principal place of business in **Delaware**.

11. Defendant, Servis One Inc., DBA BSI Financial Services, is a mortgage servicer and a debt collector, with its main headquarters located in Irving, Texas. BSI's servicing obligations and activities include those performed pursuant to a sub-servicing contract.

12. All Defendants engage in substantial and not isolated activities within the State of Florida.

### III. JURISDICTION AND VENUE

13. The jurisdiction of the Court arises under 18 U.S.C. § 1961, et seq.; 28. U.S.C. § 1331; and principles of pending jurisdiction.

14. This Court has original jurisdiction over this action under 28 U.S. Code § 1332, on the grounds that complete diversity of citizenship exists between all parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

15. Venue is appropriate in this judicial district under 28 U.S. Code § 89(c) as the events that gave rise to this Complaint occurred in this District, pursuant to 18 U.S.C. § 1965(b),  and 28 U.S.C. § 1391(b)(2).

### IV. NATURE OF RELIEF SOUGHT

16. The Plaintiffs bring this action for damages against Defendants pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"); the Florida Civil Remedies for Criminal Practice, Fla. Stat. 772.104; common law; and 28 U.S. CODE §§ 2201, 2202.

17. The Plaintiffs seek relief for actual damages, threefold damages, declaratory judgment, temporary injunction, and permanent injunction.

### V. FACTS COMMON TO ALL CAUSES OF ACTION (COUNTS)

### A. BACKGROUND

18. On 9/7/2006, the Plaintiffs bought the real property (the "Property"), located in Osceola County, FL, to wit:

**LOT 62, REUNION PHASE 1, PARCEL 1, UNIT 1, according to map or plat thereof as recorded in Plat Book 14, Pages 15-23 of the Public Records of Osceola County, Florida**
**Property address: <u>7706 Excitement Dr., Kissimmee, FL 34747-6751.</u>**

19.  A copy of the warranty deed was recorded in Osceola County Public Records, Book 3280, page 424.

20. The Plaintiffs bought the Property with a mixed-use purpose as a second home and short-term rental; however, since 2008 the Property is solely an investment property.

21. On 5/22/2019, the Plaintiffs quitclaimed deed the title to the Property, with all interest, equity, and claim, to Plaintiff, Eliezer Taveras.

22. On 8/28/2014, the Plaintiffs filed a Declaratory Action in the Circuit Court for Osceola County (the "State Court"), under Case No. 2014CA002620 ("Declaratory Action"), seeking a to declare a certain mortgage referencing the Property, and recorded in the Official Records of Osceola County, Florida, Book 3282, Page 429 (the "Mortgage"), null, void, and canceled, and not act as a valid encumbrance on the Property.

23. The matter was captioned Eliezer Taveras and Valeria Taveras *v.* Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, Not in Its Individual Capacity but as Trustee of ARLP Trust 4.

24. On 01/29/2015, the State Court entered Final Default Declaratory Judgment (Declaratory Judgment). A copy of the Declaratory Judgment has been incorporated by reference and attached hereto as Exhibit "1".

25. At all-time described herein, Plaintiff, Eliezer Taveras ("Eliezer"), head of family, was handling the family businesses and was in charge of reviewing all documentation related to the Declaratory Action.

## B. <u>ACTS IN FURTHERANCE OF THE SCHEME TO DEFRAUD</u>

### THE FIRST PHACE

26.    The Defendants designed and implemented a scheme to get the Declaratory Judgment vacated, in order to acquire title to, right, or interest in the Property as follows:

27.    On around 6/22/2015, BANA manufactured or caused to be manufactured a false promissory note (the "B-Note"). A copy of the B-Note has been incorporated by reference and attached hereto as Exhibit "2".

28.    The B-Note contains several false and misleading statements and representations in purported compliance with Florida Uniform Commercial Code ("UCC"):[1]

29.    In order to represent that Valeria Taveras is liable for the false promissory note, the B-Note represents that Valeria Taveras executed it.

30.    Accordingly, an unknown individual, more likely acting within the course and scope of his employment or contractual relationship with BANA, forged Valeria Taveras' signature in the document;

31.    To represent a "security interest" in the Property, the B-Note states the address of the Property;

32.    To represent that a possible future holder of the B-Note would be a legal holder in due course, with rights to enforce it, the document states "I understand that the Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder"";

33.    The B-Note represents to be a "negotiable instrument" as that term is defined by UCC 673.1041.

---

[1] Fla. Stat. § 673, and § 674.

34.  Christiana Schmitt, who purports to be Vice president of BANA, indorsed the B-Note;

35.  The indorsement was a "blank indorsement" as that term is defined by FL Stat. 673.2051(2).

36.  BANA delivered or caused to be delivered the B-Note to BSI or to the Trust.

37.  On 02/25/2015, the Trust appealed the Declaratory Judgment in the Florida Fifth District Court of Appeal ("5DCA").

38.  On around 6/22/2015, Manuel Villegas, acting within the course and scope of his employment or contractual relationship with BSI, signed a sworn affidavit (the "Affidavit"), containing several materially false statements and representations regarding the B-Note.

39.  A copy of the Affidavit is been incorporated by reference and attached hereto as Exhibit "3".

40.  The Affidavit asserts that Valeria Taveras signed (executed) the B-Note [*see* Exhibit 3, ¶¶ 6&13(B)];

41.  The Affidavit states that the Trust "is the holder of the Note and Mortgage and is the party **entitled to enforce them**[.]" (emphasis added) [*id*. ¶ 9];

42.  The Affidavit states that "The Trust acquired the subject Note for value and without notice of forgery and/or any defense, defect or other infirmity thereto[.]" [*id*. ¶ 12].

43.  Copies of the B-Note and the Mortgage were attached to the Affidavit.

44.  On 06/25/2015, the Trust filed in the State Court a motion to vacate the Declaratory Judgment (the "Motion").

45.  A copy of the Motion, without attachments, has been incorporated by reference and attached hereto as Exhibit 4.

46. The Motion misrepresents the Trust's legal rights to enforce the Mortgage as follows:

47. The Trust presented the B-Note as genuine to the State Court;

48. The Motion asserts that the Mortgage secures the B-Note [*See* Exhibit 4, ¶ 3];

49. The Motion asserts that the "Plaintiffs" (Valeria Taveras), signed the B-Note [*id*, ¶ 4];

50. The Motion asserts that the Trust "is entitled to enforce" the B-Note [*id*. ¶ 10];

51. The Motion represents the Trust's purported rights to an interest in the Property [*id*, ¶¶ 1-10].

52. Copies of the Affidavit and the B-Note were annexed to the Motion.

53. On 07/07/2015, in addition to the above-described acts, the Trust filed its brief in the 5DCA ("Brief").

54. The Brief misrepresents the Trust's legal rights to enforce the Mortgage.

55. On around 01/18/2016, despite the fact that the Declaratory Judgment was still enforceable, BSI, on behalf of the Trust, started collecting or trying to collect over $400,000.00 from the Plaintiff using the US Postal service.

56. On 1/18/2016, BSI sent, via US Postal service, a mortgage statement collecting, or trying to collect 408,880.58 from Plaintiff. A copy of this statement is been incorporated by reference and attached hereto as part of composite Exhibit 5.

57. On 3/18/2016, BSI sent, via US Postal service, a mortgage statement collecting, or trying to collect 425,162.32 from Plaintiffs. A copy of this statement is been incorporated by reference and attached hereto as part of composite Exhibit 5.

58. On 8/18/2016, BSI sent, via US Postal service, a mortgage statement collecting, or trying to collect 440,011.52 from Plaintiffs. A copy of this statement is been incorporated by reference and attached hereto as part of composite Exhibit 5.

59. The Defendants' statements and representations, including the B-Note, the Motion, the Affidavit, the mortgage statements mailed, and the Brief, were an important factor to induce Eliezer to believe that the Trust was, in fact, holder in due course of a genuine promissory note, which would give the Trust legal rights to enforce the Mortgage.

60. Accordingly, Eliezer discussed the issues with his wife, Valeria Taveras.

61. The Plaintiffs were induced to believe that they would not succeed, neither on appeal nor in the Declaratory Action. Consequently, the Plaintiffs agreed to stop answering the Appeal and to dismiss the Declaratory Action.

62. On 3/10/2016, relying in the Defendants' representation, and against their will, the Plaintiffs filed in the State Court a notice of voluntary dismissal of the Declaratory Action ("Notice of Dismissal"), and stopped responding the Appeal.

63. The Defendants' scheme succeeded: The Declaratory Judgment was reversed in the 5DCA, and the Declaratory Action dismissed.

64. The Defendants' acts and practices caused substantial personal and business damages in the aggregate amount presently in excess of $1,000,000.00; it also caused to the Plaintiffs distress, and mental anguish.

**B. THE SECOND PHASE**

65. On around 07/24/2017, the Trust uttered the B-Note for an unknown value to U.S. BANK, NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST ("US Bank").

66. Accordingly, on 7/24/2017, an assignment of mortgage (the "AMO"), was recorded in the Official Records of Osceola County, FL, Book 5183, and page 179-180.

67. On 04/20/2018, a corrective assignment of mortgage (the "Corrective"), was recorded in

8

Official Records of Osceola County, FL, Book 5320, page 1059-1060.

68. Copies of the AMO and the Corrective (jointly referred to as "Assignments") have been incorporated by reference and attached hereto as composite Exhibit 6.

69. The Assignments assert that a certain note was transferred and assigned, together with the Mortgage.

70. In purported compliance with UCC 673, in order to represent that US Bank is now the "holder in due course" with the rights to enforce the "note", the Assignments represent that the Mortgage references the "note" and that the Trust was transferring it.

71. The Assignments assert that the assignor was assigning and transferring to the assignee "FOR GOOD AND VALUABLE CONSIDERATION…all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon."

72. For instance, the State Court's records evidence that the "note" assigned and transferred to US Bank was, in fact, the B-Note.

73. The uttering of the forged promissory note has resulted in a cloud on title to Property, a cloud of uncertainty over Plaintiffs' investment activities, and a purported debt over $1,000,000 against Valeria Taveras.

## CAUSES OF ACTION

### COUNT I
### FRAUD IN THE INDUCEMENT
### ALL PLAINTIFFS
### AGAINST ALL DEFENDANTS

74. Paragraphs 1 through 64 are re-alleged and incorporated by reference.

75. The Plaintiffs bring this action against all defendants to remedy fraud.

76. In furtherance of the Defendants' scheme to defraud, in order to take or acquire an interest

in the Property, they intentionally made and presented material representations of facts to the Plaintiffs that were false, known to be false when presented.

77.  While the B-Note represents that it was executed/signed by Valeria Taveras, that representation is false, intended to mislead.

78.  While the B-Note purports to be a negotiable instrument with a security interest in the Property, and that a future holder would be a holder in due course, those representations are false, intended to mislead the Plaintiffs and the State Court to believe in the Trust's "legal rights" to enforce the Mortgage.

79.  BANA knew or should know that the false promissory note would be used to pursue the reversal of the Declaratory Judgment.

80.  The Affidavit contains false and misleading information regarding the Trust's legal rights to enforce the Mortgage.

81.  While the Affidavit represents that the Trust was the "holder in due course" entitled to enforce the B-Note; that representation is false, intended to mislead.

82.  The Affidavit falsely asserts that Valeria Taveras signed/executed the B-Note.

83.  The statement that the B-Note was "without notice of forgery and/or any defense, defect or other infirmity thereto" is false, intentionally made to defraud.

84.  BSI knew or should know that the Affidavit was going to be used in the Motion to induce reliance.

85.  The Motion contains false and misleading statements and representations. While it represents that the B-Note was genuine, that the Mortgage secures the B-Note, that the Trust was entitled to enforce the B-Note, and the Trust purported rights to enforce the Mortgage, those representations are false, made to defraud.

86. Further, the Motion attached the counterfeit promissory note and the Affidavit, a materially false representation of the Trust's purported rights to enforce the B-Note, made to induce reliance.

87. The Trust's Brief contains false representations of the Trust's legal rights to enforce the Mortgage.

88. Defendants knew the foregoing representations to be false when made.

89. Defendants intended to induce the Plaintiffs to act in reliance of the misrepresentations.

90. The Plaintiffs did reasonably and justifiable acted in reliance on Defendants' misrepresentations and upon a state of facts, which plaintiffs were led to believe existed.

91. The Plaintiffs' reliance on the Defendants' misrepresentations was justifiable, the Defendants' scheme had an acceptable level of materiality; the B-Note looks genuine and is capable of misleading the average person; further, the Affidavit, executed under risk of perjury, and the mortgage statements mailed, collaborated to increase credibility.

92. Defendants' misrepresentations could not be discovered under the circumstances.

93. As a direct and proximate cause of Defendants' misrepresentations, the Plaintiffs were deprived of a fair trial.

94. Further, the Plaintiffs have been and are continuing to be substantially injured, personally, and in their business or property, in the form of a cloud on title to the Property, personal and business loss, the exact amount to be determined at trial.

95. Defendants' misrepresentations were a substantial factor causing the harm.

96. Had the Plaintiffs known that the Defendants were misrepresenting the above-indicated issues and facts, including the Trust's legal rights to enforce the Mortgage, they had not signed the Notice of Dismissal nor abandoned the Appeal.

**COUNT II**
**RICO 18 U.S.C. § 1964(c)**
**ELIEZER TAVERAS AGAINST ALL DEFENDANTS**

97.  Paragraphs 1 through 73 are re-alleged and incorporated by reference.

98.  Plaintiff, Eliezer Taveras, brings this action against all Defendants, pursuant to federal RICO, 18 U.S.C. § 1964(c).

99.  18 U.S.C. § 1964(c) provides a cause of action for threefold damages, including a reasonable attorney's fee for "Any person injured in his business or property by reason of a violation of section 1962 of this chapter."

100. Plaintiff, Eliezer Taveras, is been harmed in his business and property as a direct and proximate cause of Defendants' illegal acts and practices in violation of federal RICO; therefore, he has standing to bring this action.

**THE RICO ENTERPRISE**

101. Defendants BANA, BSI, and the Trust, created and conducted an association-in-fact enterprise (the "Enterprise-1"), which might substantially change its membership over time, and might include other unspecified persons or entity members like attorneys, public notaries, accountants, collectors, etc.

102. The members of the Enterprise-1 might change roles from time to time, but the overall enterprise remains intact in general form and purpose, directed toward an economic goal: the acquisition of title to, right, or interest in real property.

103. At all times relevant herein, the Enterprise-1 was an "enterprise", as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c), engaged in, or the activities of which affect interstate commerce.

104. As a whole, all Defendants acted jointly, with very well-defined ongoing roles in the

organization.

105. The Trust, at all relevant times, was the principal of, exerted control over and directed the operations of Enterprise-1 and each of its component parts.

106. Defendants BANA and BSI were employed by or associated with Enterprise-1 and its component parts and participated in the conduct of its affairs.

**PROVISIONS**

107. Under 18 U.S.C. § 1962(c), "it shall be unlawful for any person employed by . . . any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . .", including violation, or conspiracy to violate 18 U.S. Code 1341, 18 U.S. Code 1344, between others.

108. The use of the mails in conjunction with a scheme to defraud is a criminal act in violation of the Federal Mail Fraud Statute, 18 U.S.C. § 1341, punishable up to 20 years in prison.

109. Any act which is indictable under the provisions of 18 U.S.C. § 1341 is a "racketeering activity", as that term is defined in 18 U.S.C. § 1961(1)(B).

110. Under 18 U.S.C. § 1344, it is unlawful, punishable for up to $1,000,000 or imprisonment for up to 30 years, or both, to knowingly execute, or attempt to execute, a scheme or artifice to defraud a financial institution.

111. Any act which is indictable under the provisions of 18 U.S.C. § 1344 is a "racketeering activity", as that term is defined in 18 U.S.C. § 1961(1)(B).

112. Under 18 U.S.C. § 1961(5) two or more acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering

activity is a "pattern of racketeering activity".

## THE PATTERN OF RACKETEERING ACTIVITY

113. To execute the scheme, in pursuance of the Enterprise-1 ultimate goal, for nearly three years the Defendants engaged in a *pattern of racketeering activity*, as follows:

114. For the sake of the Defendants' scheme to defraud, in order to take or acquire an interest in the Property, they intentionally made representations of facts to Plaintiffs that were false, known to be false when presented.

115. BANA intentionally fabricated, or caused to be fabricated the counterfeit promissory note and intentionally indorsed it in blank, so that it could be uttered to another victim or money-hungry person.

116. While the B-Note represents that it was executed by Valeria Taveras, that representation is false.

117. The purported compliance of the B-Note with several provisions of the UCC, including that it is a negotiable instrument with a security interest in the Property, and that a future holder would be a holder in due course, are materially false statements and representations, intended to mislead.

118. BANA knew or should know that the false promissory note would be used to pursue the reversal of the Declaratory Judgment and intentionally directed its employee to do a blank indorsement, so that it could be "transferred" to another victim or money-hungry individual.

119. In furtherance of the scheme, BSI produced or caused to be produced the Affidavit containing false and misleading statements and representations regarding the Trust's legal rights to enforce the mortgage, including that the Trust was the "holder in due course"

entitled to enforce the B-Note, and that Valeria Taveras executed the B-Note, and that there was no evidence of forgery in the B-Note.

120.  In furtherance of the Enterprise-1's scheme, the Trust filed the Motion in the State Court's Declaratory Action, containing false and misleading statements and representations, including the Trust's legal rights to enforce the Mortgage under the B-Note, that Valeria Taveras executed the B-Note, and that the Mortgage secures the B-Note.

121.  The Trust's Brief contains false representations of the Trust's legal rights to enforce the Mortgage.

122.  In conjunction with a scheme to defraud, to the affairs of Enterprise-1, BSI engaged in a continuous series of predicated acts of mail fraud, collecting or trying to collect money from the Plaintiffs, in multiple violations of 18 U.S.C. § 1341.

123.  The statements mailed to the Plaintiffs were part of the scheme to collect or try to collect over $ 400,000 by means of false and fraudulent pretenses and representations. Further, it was also part of the scheme to induce reliance in the Defendants' representations of the Trust's purported interest in the Mortgage.

124.  The materially false statements and representations made by Defendants were intentionally made to defraud.

125.  Defendants knew the foregoing representations to be false when made.

126.  Defendants intended to induce the Plaintiffs to act in reliance of the representations.

127.  The Plaintiffs did reasonably and justifiable acted in reliance on the representations and upon a state of facts, which plaintiffs were led to believe existed.

128.  The Plaintiffs' reliance on the Defendants' representations was justifiable, the Defendants' scheme had an acceptable level of materiality; the B-Note looks genuine and is capable of

misleading the average person; further, the Affidavit, executed under risk of perjury, added a high level of credibility.

129. Defendants' misrepresentations could not be discovered under the circumstances.

130. As a direct and proximate cause of Defendants' misrepresentations, the Plaintiffs abandoned the Appeal and dismissed the Declaratory Action, been prevented from a fair trial.

131. As a result, the Trust acquired an interest in the Property by illegal means.

132. As part of the Enterprise-1's scheme, the Trust uttered the B-Note to US Bank, defrauding a financial institution, in violation of 18 U.S.C. § 1344. Eliezer Taveras is been harmed by such an illegal act.

133. The racketeering acts set forth herein were related and similar, were committed as part of the Defendants' scheme to defraud the Plaintiffs.

134. The violations of 18 U.S.C. § 1341 and 18 U.S.C. § 1344 in the time-frame, constitute a pattern of racketeering activity.

135. The nature of the described acts, misrepresentations, and omissions in furtherance of the conspiracy, gave rise to an inference that Defendants, co-conspirators, and other Enterprise-1's participants agreed to the objective of an 18 U.S.C. § 1962(c) violation, by virtue of violations of 18 U.S. Code § 1341, and violation of 18 U.S. Code § 1344.

**DAMAGES SUSTAINED BY THE PLAINTIFF**

136. As a direct and proximate cause of Defendants' overt acts and predicate acts in furtherance of violation of 18 U.S.C. § 1962(c), Plaintiff, Eliezer Taveras, has been substantially injured in his business and property in the aggregate amount presently in excess of $1,000,000.00, the exact amount to be determined at trial.

137. Under 18 U.S.C. § 1964(c), Plaintiff, Eliezer Taveras, is entitled to recover from Defendants, jointly and severally, three-fold damages sustained by him, together with the costs of this lawsuit and reasonable attorneys' fees.

**COUNT III**
**CIVIL REMEDIES FOR CRIMINAL PRACTICE**
**FLA. STAT. § 772**
**PLAINTIFFS**
**AGAINST BANA AND THE TRUST**

138. Paragraphs 1 through 73 are re-alleged and incorporated by reference.

139. The Plaintiffs bring this action against BANA, and the Trust, pursuant to Florida Civil Remedies for Criminal Practice, section § 772.104 of Florida Statutes, which provides a cause of action for threefold damages sustained for any person that has been injured by reason of any violation of the provisions of section § 772.103.

**THE ENTERPRISE**

140. Defendants, BANA, and the Trust created and conducted an association-in-fact enterprise (the "Enterprise-2"), which may substantially change its membership over time, and might include other unspecified persons or entity members like attorneys, public notaries, accountants, collectors, etc.

141. The members of the Enterprise-2 might change roles from time to time, but the overall association-in-fact enterprise remains intact in general form and purpose, directed toward an economic goal: the acquisition of title to, right, or interest in real property.

142. At all times relevant herein, the Enterprise-2 was an "enterprise", within the meaning of section 772.102(3).

143. As a whole, BANA and the Trust acted jointly, with very well-defined ongoing roles in the organization.

144. At all relevant times, the Trust was the principal of, exerted control over and directed the operations of Enterprise-2 and each of its component parts. The Trust utilized that control to get the Declaratory Judgment void, to acquire title to or interest in the Property.

145. Defendant, BANA, was employed by or associated with Enterprise-2 and its component parts and participated in the conduct of its affairs.

## PROVISIONS

146. Under section 772.102 of Fla. Stat. it is a *criminal activity* to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment or information under Chapter 831.07, Chapter 831.02, between others.

147. Fabricating a false promissory note, with the intent to injure a person, constitute is a felony under Fla. Stat. 831.07.

148. Under Fla. Stat. 831.02 whoever utters a forged instrument, knowing the same to be false, altered, forged, or counterfeited, with intent to injure or defraud any person, shall be guilty of a felony of the third degree.

149. Under section § 772(4) it is a "pattern of criminal activity" to engage in at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents; provided that the last of such incidents occurred within 5 years after a prior incident of criminal activity.

## THE PATTERN OF CRIMINAL ACTIVITY

150. Within a three-year period BANA and the Trust, through the Enterprise-2, engaged in at least two incidents of *criminal activity* that had similar intents, results, accomplices,

victims, or methods of commission or otherwise are interrelated by distinguishing characteristics, as described below.

151. In pursuance of the Enterprise-2's objectives, and in violation of Fla. Stat. 831.07, BANA fabricated or caused to be fabricated the false promissory note, with the intent to injure the Plaintiffs.

152. The B-Note is a false promissory note, intentionally fabricated to injure the Plaintiffs and as part of the Enterprise-2's scheme to take the Property or interest on title to.

153. The B-Note was an important factor inducing the Plaintiffs to believe in the purported Trust's rights to enforce the Mortgage and inducing them to dismiss the Declaratory Action and to abandon the Appeal.

154. BANA and the Trust violated or conspired to violate Fla. Stat. 831.07, and as consequence the Plaintiffs were substantially injured as stated below.

155. The Enterprise-2 reached its goal by acquiring, through the Trust, interest in the Property.

156. The blank indorsement in the B-Note was another strategy/scheme of Enterprise-2.

157. More likely considering that some of their plans could fail, BANA and the Trust agreed to make a blank indorsement in the B-Note, in order to represent that the false instrument would become payable to the bearer.

158. In violation of Fla. Stat. 831.02, and for the sake of Enterprise-2's affairs, the Trust uttered the B-Note to US Bank, knowing the same to be false. The Defendants were and are been substantially injured by the unlawful act as stated below.

159. To the affairs of Enterprise-2, through a pattern of criminal activity, BANA and the Trust violated or conspired to violate Fla. Stat. 772.103 by virtue of violation or conspiracy to violate Fla. Stat. § 831.07 and § 831.02.

**DAMAGES SUSTAINED BY THE PLAINTIFFS**

119. As a direct and proximate cause of BANA and the Trust's overt acts and predicate acts in furtherance of violations of Fla. Stat. 772.103 the Plaintiffs have been and are continuing to be injured in the form of business and personal losses, in an aggregate amount presently in excess of $1,000,000.00, and in the form of mental anguish, distress, a cloud on title to property, and a purported debt against Valeria Taveras, the exact amount to be determined at trial.

160. Under s. 772.104(1), the Plaintiffs are entitled to recover from BANA and the Trust, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**COUNT IV**
**CIVIL REMEDIES FOR CRIMINAL PRACTICE**
**CHAPTER § 772 OF FL. STAT.**
**ALL PLAINTIFFS**
**AGAINST BSI AND THE TRUST**

161. Paragraphs 1 through 64 are re-alleged and incorporated by reference.

162. The Plaintiffs bring this action against BSI and the Trust, pursuant to Florida Civil Remedies for Criminal Practice, Fla. Stat. § 772.104, which provides a cause of action for threefold damages sustained for any person that has been injured by reason of any violation of the provisions of section 772.103.

163. The Plaintiffs have standing to bring this action.

**THE ENTERPRISE**

164. The Trust and BSI created and conducted an association-in-fact enterprise (the "Enterprise-3"), which may substantially change its membership over time, and might include other unspecified persons or entity members like attorneys, public notaries, accountants,

20

collectors, etc.

165. The members of the Enterprise-3 might change roles from time to time, but the overall association-in-fact enterprise remains intact in general form and purpose, directed toward an economic goal: the acquisition of title to, right, or interest in real property.

166. At all times relevant herein, the Enterprise-3 was an "enterprise", within the meaning of Florida s. 772.102(3).

167. As a whole, the Trust and BSI acted jointly, with very well-defined ongoing roles in the organization.

168. The Trust, at all relevant times, was the principal of, exerted control over and directed the operations of Enterprise-3 and each of its component parts. The Trust utilized that control to get the Declaratory Judgment void, to acquire title to or interest in the Property.

169. Defendant, BSI, was employed by or associated with Enterprise-3 and its component parts and participated in the conduct of its affairs.

### PROVISIONS

170. Under section 772.102 of Fla. Stat. it is a *criminal activity* to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment or information under Fla. Stat. § 837.02, and any conduct which is subject to indictment or information as a criminal offense, listed in 18 U.S.C. § 1961, including 18 U.S.C. § 1341.

171. The use of the mails in conjunction with a scheme to defraud is a criminal act (listed on 18 U.S.C. § 1961), in violation of the Federal Mail Fraud Statute, 18 U.S.C. § 1341, punishable up to 20 years in prison.

172. Under Fla. Stat. § 837.02, a person commits a felony of third degree if he makes a false

statement, which he or she does not believe to be true, under oath in an official proceeding in regard to any material matter.

173. Under section § 772(4) it is a "pattern of criminal activity" to engage in at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents; provided that the last of such incidents occurred within 5 years after a prior incident of criminal activity.

## THE PATTERN OF CRIMINAL ACTIVITY

174. The *criminal activities* set forth herein were carried out over nearly one year, the acts were related and similar, were committed as part of the Defendants' scheme to reverse the Declaratory Judgment, to collect or intend to collect money from Plaintiffs to enrich themselves, and the ultimate goal: the acquisition of title to, right, or interest in the Property.

175. From the inception of the scheme, BSI intentionally fabricated or caused to be fabricated the Affidavit, knowing that it contained materially false and misleading statements and representations.

176. In violation of Fla. Stat. 837.02, Mr. Villegas executed the Affidavit making false statements in regard to a material matter, which he did not believe to be true, including the Trust's purported rights to enforce the Mortgage, the false representation that Valeria Taveras executed the B-Note, and that the note was without signal of forgery.

177. BSI must be held liable for the act perpetrated by its employee, acting within the course and scope of his employment or contractual relationship with BSI.

178. In furtherance of the Enterprise-3's scheme, the Trust filed the Motion containing false and

misleading information in relation to its purported rights to enforce the Mortgage, and attached copies of the Affidavit and the false promissory note, presented as genuine to the State Court, with the intention to defraud.

179. BSI and the Trust's materially false statements and representations were intentionally made to mislead the Plaintiffs and the State Court, in order to take or acquire an interest in the Property.

180. Defendants knew the foregoing representations to be false when made, intended to induce the Plaintiffs to act in reliance of the misrepresentations.

181. In furtherance of the scheme or artifice to defraud, in the conduct of the Enterprise-3's affairs, BSI mailed multiple mortgage statements, in multiple violations of 18 U.S.C. § 1341.

182. The statements mailed to the Plaintiffs, in multiple violations of 18 U.S.C. § 1341, were part of the scheme to collect or try to collect over $ 400,000 by means of false and fraudulent pretenses and representations, including the Trust's interest in the Mortgage. Further, it was also part of the scheme to induce reliance in the representations.

183. The Plaintiffs did reasonably and justifiable acted in reliance on the misrepresentations and upon a state of facts, which plaintiffs were led to believe existed.

184. The Plaintiffs' reliance on the Defendants' misrepresentations including the B-Note attached to the Affidavit, the Motion, and the mortgage statements mailed, added a high level of credibility.

185. Defendants' misrepresentations could not be discovered under the circumstances.

186. As a direct and proximate cause of Defendants' misrepresentations, the Plaintiffs abandoned the Appeal and dismissed the Declaratory Action, been prevented from a fair

trial.

187. In violation of Fla. Stat. 772.103, BSI and the Trust, acting in concert with each other, violated or conspired to violate Fla. Stat. § 837.02, and 18 U.S.C. § 1341.

## DAMAGES SUSTAINED BY THE PLAINTIFFS

119. As a direct and proximate cause of The Trust and BSI overt acts and predicate acts in furtherance of violations of the provision of Fla. Stat. 772.103 the Plaintiffs have been and are continuing to be injured in business, and personal losses, and a purported debt, in an aggregate amount presently in excess of $1,000,000.00, and in the form of mental anguish, distress, the exact amount of damages to be determined at trial.

188. Under s. 772.104(1), the Plaintiffs are entitled to recover from the Trust and BSI, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## COUNT V
## FLA. STAT § 817.535
## ALL PLAINTIFFS AGAINST THE TRUST

189. Paragraphs 1 through 73 are re-alleged and incorporated by reference.

190. The Plaintiffs bring this action against the Trust, pursuant to Section § 817.535(8)(a) of Florida Statutes.

191. The Plaintiffs seek actual and punitive damages subject to the criteria in section 768.72, a declaration that both, the AMO and the Corrective are null and void *ab initio* and such other relief or remedy that the court determines is just and proper within its sound judicial discretion, together with the costs of this lawsuit and reasonable attorneys' fees.

192. Under Fla. Stat. § 817.535, whoever file or direct another person to file in official record an "instrument", including assignment of mortgage or note, or any other document that

relates to or attempts to restrict the ownership, transfer, or encumbrance of or claim against real or personal property, or any interest in real or personal property… containing materially false, fictitious, or fraudulent statement or representation that purports to affect an owner's interest in the property described in the instrument commits a felony of the third degree.

193. Fla. Stat. § 817.535(8)(a) provides a cause of action for damages sustained for any person adversely affected by virtue of violation(s) of Fla. Stat. § 817.535.

194. Under Fla. Stat. 673.2031(1) "An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument."

195. Under section 673.2031(2) the transfer "vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course".

196. The Trust filed or directed another person to file in official record an "instrument", the AMO and the Corrective, containing materially false, fictitious, and fraudulent statements and representations in violation of Fla. Stat. 817.535.

197. The Assignments falsely states that the Mortgage references the note, when in fact, the "note" transferred to US Bank was the B-Note.

198. The Mortgage does not reference the B-Note.

199. The Assignments themselves are materially false representations that US Bank is now the holder in due course of the B-Note, vested of rights to enforce it.

200. The B-Note is false and does not encumber the Property and the "holder" is not the "holder in due course".

201. The Trust intended to harm the Plaintiffs.

202. The Assignments affect Plaintiff, Eliezer Taveras, in that they relate to or attempt to restrict the ownership, transfer, or encumbrance of or claim against the Property.

203. The Assignments affect Plaintiff, Valeria Taveras, in that they constitute a purported debt against her.

204. As a direct and proximate cause of the Trust's unlawful acts in violation of Fla. Stat. 817.535 the Plaintiffs have been and are continuing to be injured in an aggregate amount presently in excess of $1,000,000.00, the exact amount to be determined at trial.

205. Under FL Stat. § 817.535(8)(b) the Plaintiffs are entitled to recover from the Trust, actual and punitive damages subject to the criteria in s. 768.72, and such other relief or remedy that the court determines is just and proper within its sound judicial discretion, together with the costs of this lawsuit and reasonable attorneys' fees.

206. Under FL Stat. 817.535(8)(b)(1) the Corrective and the AMO must be declared null and void *ab initio* and the Court must order the instruments sealed from the official record and removed from any electronic database used for indexing or locating instruments in the official record.[2]

207. The Court should also permanently or for a period of time, enjoin the Trust from filing or directing a person to file an instrument in the official records without prior review and approval for filing by a circuit or county court judge, provided that as to third parties who may have given value for an interest described or granted by any instrument filed in violation of the injunction, the instrument shall be deemed validly filed and provides constructive notice, notwithstanding any failure to comply with the terms of the injunction.

---

[2] Declaring only the Corrective null and void *ab initio* might then leave the AMO "valid", however, as it is also in violation of Fla. Stat. 517.535, it must also be declared null and void *ab initio*, pursuant to FL Stat. 817.535(8)(b)(1).

<u>COUNT VII</u>
**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**
**28 U.S. CODE §§ 2201, 2202**
**ALL PLAINTIFFS AGAINST BANA AND THE TRUST**

208. Paragraphs 1 through 73 are re-alleged and incorporated by reference.

209. The Plaintiffs bring this action against BANA and the Trust, seeking declaratory judgment, pursuant to 28 U.S.C. § 2201 (Creation of Remedy), and injunctive relief pursuant to 28 U.S.C. § 2202 (further relief).

210. The Plaintiffs seek a declaration that Valeria Taveras is not liable, and never was liable for the B-Note, that BANA is liable as a matter of law; and that the Trust, as a BANA's assignee, and any other person claiming to be in possession of the B-Note or *holder in due course*, never had, and do not now have, standing to prosecute any claim against the Plaintiffs, in any arbitration proceeding or lawsuit commenced in any court, and that the Plaintiffs are under no obligation to pay any monies in connection to the B-Note.

211. This Court has authority to order the declaratory relief requested under 28 U.S.C. § 2201. If the Court orders such relief, 28 U.S.C. § 2202 authorize this Court to issue injunctive relief.

212. The B-Note references the Property and is a purported debt against Valeria Taveras. Therefore, the Plaintiffs have standing to bring this action.

**DECLARATORY JUDGMENT**

213. An actual controversy that is ripe for judicial determination has arisen and now exists regarding whether Plaintiff, Valeria Taveras, is liable for the B-Note, or if BANA must be held liable for it.

214. An actual controversy that is ripe for judicial determination has arisen and now exists regarding whether the B-Note legally encumbers the Property.

215. Under Florida's law, a person is not liable for an instrument unless the person signed or authorized another person to sign the instrument on his behalf (FL Stat. 673.4011(a)).

216. Under Florida's law, an unauthorized signature is ineffective (FL Stat. 673.4031).

217. Under Florida's law, impostors are liable for forged instruments (FL Stat. 673.4041).

218. Plaintiff, Valeria Taveras, **did not** sign/execute the B-Note, nor authorized any person to sign it on her behalf.

219. While the B-Note purports to encumber the Property, that representation is false.

220. The B-Note is a false security instrument manufactured by BANA.

221. Under Florida law, the actual or future "holder in due course" of the false promissory note might claim an interest in the Property, thus the B-Note constitutes a risk of irreparable injury to Plaintiff(s).

222. Plaintiffs are entitled, as a matter of law, to a judgment declaring that Plaintiff, Valeria Taveras, never was and is not liable for the B-Note, BANA is.

223. Plaintiffs are entitled, as a matter of law, to a judgment declaring that Defendant, the Trust, as a BANA's assignee, and any other person claiming to be in possession of the B-Note or "holder in due course", never had, and do not now have, standing to prosecute any claim against the Plaintiffs, in any arbitration proceeding or lawsuit commenced in any court and that the Plaintiffs are under no obligation to pay any money in connection to the B-Note.

**INJUNCTIVE RELIEF**

224. Defendants, acting singly and in concert with each other, defrauded the Plaintiffs, who are at the risk of irreparable harm for which there exists no adequate remedy at law.

225. Injunctive relief is necessary and appropriate in this case because the Defendants' misrepresentations have resulted in a cloud on title to the Property and a cloud of

uncertainty over the Plaintiffs' investment activities, and a purported debt against Valeria Taveras.

226. Defendants' conduct warrants the grant of a permanent injunction against them, precluding any intent to collect money from Plaintiffs and their initiation against Plaintiffs of any legal proceedings, including but not limited to arbitration, lawsuits, in any forum or jurisdiction seeking payment for, or equitable relief in connection to the B-Note

227. A balancing of the equities favors granting injunctive relief. Denial of the relief sought will cause far greater harm to the Plaintiffs than the granting of the relief will cause Defendants.

228. Granting the injunctive relief sought will serve the imperative of denying Defendants further opportunities to unjustly enrich themselves through the ill-gotten proceeds of illegal activity, in the sale or transfer of the B-Note, or further similar conduct.

229. Both, **BANA** and the **Trustee** are national banks, their conduct affects millions of people. The public interest of protection from banks' fraudulent conduct is guaranteed by both, federal and Florida law. Therefore, under such egregious conduct by these national banks, granting the relief south will foster and protect the public interest.

230. There is a substantial likelihood that Plaintiffs will succeed on the merits of the claims for the reliefs sought herein.

231. There is a need for preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of injury during the pendency of this action and to preserve the possibility of effective final relief; including, but not limited to, temporary and preliminary injunctions.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff(s) request relief as follows:

29

1. Compensatory damages in an amount in excess of $1,000,000.00, the exact amount to be determined at trial.

2. Compensatory damages, costs, and reasonable attorney's fees pursuant to the FIRST claim(s);

3. Treble damages, costs, and reasonable attorney's fees on the SECOND through FOURTH claim(s);

4. On the FIFTH claim(s) relief as follows:

   a. Compensatory damages.

   b. Award punitive damages in accordance with s. 768.72, F.S.

   c. A declaration that the AMO and the Corrective are null and void.

   d. Injunctive relief, enjoining the Trust and its respective directors, employees, heirs, agents, successors in interest, assignees, representatives, and those persons in active concert or participation with it from filing or from directing another person to file any future instruments affecting property interests in an official record without prior court approval.

   e. Appropriate, costs, and reasonable attorney's fees.

5. Relief pursuant to the SIXTH claim(s) as follows:

   a. **An order by this Court declaring:**

      i. That Plaintiff, Valeria Taveras, never was and is not liable for the B-Note as a matter of law.

      ii. That Defendant, Bank of America, N.A. is liable for the B-Note *ab initio*.

      iii. That the B-Note does not encumber the Property;

      iv. That Defendant, the Trust, as an assignee of BANA, and any other person

claiming to be the "holder in due course" of the B-Note, never had, and do not now have, standing to pursue any claim against the Plaintiffs, their heirs, or successors in interest, in connection to the B-Note, in any arbitration proceeding or lawsuit commenced in state or federal court;

    **v.**  That the Plaintiffs are under no obligation to pay any money to BANA, the Trust, and any other person claiming to be the "holder in due course" of the B-Note;

    vi.  Disgorgement of ill-gotten monies, to prevent and remedy fraud in relation to the B-Note.

**b.**  Injunctive relief as follows:

    i.  Injunctive relief enjoining and restraining Defendants, BANA, the Trust and BSI, and their respective directors, employees, heirs, agents, successors in interest, assignees, representatives, and those persons in active concert or participation with them, from:

      1.  Submitting to Plaintiffs, their heirs, and successors in interest, any bills or mortgage statements seeking payment in connection to the B-Note;

      2.  Initiating or pursuing against Plaintiffs, their heirs, and successors in interest, any legal proceedings, including but not limited to lawsuits, mortgage foreclosures, in any forum or jurisdiction seeking payment for or equitable relief regarding any alleged right in connection to the B-Note.

    ii.  Preliminary, injunctive, and ancillary relief as might be necessary to avert the likelihood of injury during the pendency of this action and to preserve the possibility of effective final relief; including, but not limited to, temporary and

preliminary injunctions.

## JURY DEMAND

Pursuant to Rule 38 of Federal Rule of Civil Procedure Plaintiffs hereby request a trial by jury on all issues triable by jury.

## VERIFICATION

**Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true, to the best of my knowledge and belief.**

Eliezer Taveras
7706 Excitement Dr
Kissimmee, FL 34747
305-515-4840
Etaveras2020@gmail.com

Respectfully submitted on January 27th, 2021,

Valeria Taveras
7706 Excitement Dr
Kissimmee, FL 34747
305-515-4840
valtaveras@yahoo.com

Eliezer Taveras
7706 Excitement Dr
Kissimmee, FL 34747
305-515-4840
Etaveras2020@gmail.com